**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Morgan Matchett,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-00457-TUC-SHR (LCK)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Morgan Matchett filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) Before the Court are Plaintiff's Opening Brief, Defendant's Responsive Brief, and Plaintiff's Reply. (Docs. 17, 21, 22.) Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Kimmins for Report and Recommendation. Based on the pleadings and administrative record, the Magistrate Judge recommends the District Court, after its independent review, remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits (DIB) in July 2022, alleging disability from October 1, 2021. (Administrative Record (AR) 40, 158.) She was born in 1981, making her almost 40 years of age at the alleged onset date of her disability. (AR 227.) Plaintiff's most recent past work was as a development director at a nonprofit, from which she was let go on February 11, 2022. (AR 40-41.) Plaintiff's DIB application was denied upon initial review (AR 54–65) and on reconsideration (AR 66–78).

A hearing was held on June 13, 2024 (AR 36–53), after which the ALJ found that Plaintiff was not disabled (AR 15–28). The ALJ determined Plaintiff had one severe impairment of postural tachycardia syndrome (POTS). (AR 18.) The ALJ noted additional impairments, which he found to be not severe: fibromyalgia, headaches, hypertension, vision loss, small fiber neuropathy, COVID-19, left ankle sprain and contusion, plantar calcaneal spur to left ankle, right ankle sprain and possible fifth toe fracture, and anxiety disorder. (*Id.*) The ALJ concluded Plaintiff had the Residual Functional Capacity (RFC) to perform light work subject to the following limitations: stand and walk, or sit, six hours of each in a day; frequently lift and carry 10 pounds, climb stairs, stoop, kneel, crouch, and crawl; occasionally lift and carry 20 pounds, and be exposed to hazards; and never climb ladders. (AR 22.) The ALJ concluded at Step Four, based on the testimony of a vocational expert (VE), that Plaintiff could perform her past work as a development director. (AR 26–27.) The Appeals Council denied review of the ALJ's decision. (AR 1.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; and (2) has a severe physical or mental impairment; and (3) the impairment meets or equals the requirements of a listed impairment; or (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings

of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Plaintiff alleges the ALJ committed three errors: (1) failed to find Plaintiff's long COVID and endometriosis severe at Step Two; (2) failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony; and (3) failed to include limitations from all impairments in the RFC. The Court first evaluates Plaintiff's Step Two claim and, because it finds that issue dispositive, it does not reach the other claims.

Plaintiff argues that the ALJ erred by finding that long COVID and endometriosis were not severe impairments. Further, she contends the error was not harmless because the ALJ failed to include limitations from these impairments when formulating her RFC. Defendant disagrees, arguing that error at Step Two always is harmless if the ALJ found at least one severe impairment at that step, and the ALJ included all limitations supported by the record. Defendant argues the ALJ considered symptoms from long-term coronavirus and chronic pain when determining Plaintiff's RFC.

Social Security Regulations define a severe impairment as one that significantly limits one's ability to do basic work activities, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]" 20 C.F.R. § 404.1522(a) & (b)(1). Step Two is a gateway finding that is satisfied if a claimant establishes at least one severe impairment. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987)). When evaluating a claimant's RFC, an ALJ must consider limitations from all impairments regardless of whether the impairment was found severe at Step Two. *Id.* at 1048–49 ("The RFC therefore should be exactly the same regardless of whether certain impairments are considered "severe" or not."). Based on *Buck*, the Commissioner argues that, because Plaintiff's claim survived Step Two, it was not error for the ALJ to omit other impairments at that step because she considered them later in her analysis. (Doc. 21 at 4.)

Contrary to the suggestion of Defendant, not all Step Two errors are harmless. If an ALJ improperly determines an impairment is not severe at Step Two, that error will be harmless only if he adequately considered the limitations from that impairment when formulating the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding error at Step Two harmless because, subsequently, the ALJ "extensively discussed" the impairment and the limitations it imposed). This Court has found a Step Two error not harmless because it was not evident that the ALJ incorporated limitations from a lumbar impairment. *See Calame v. Colvin*, No. CV-12-02363-DGC, 2013 WL 3716604, at *6–7 (D. Ariz. July 15, 2013) (ALJ mentioned the results of a lumbar X-ray and MRI, but decision did not reflect that he incorporated those findings into the RFC).

In Plaintiff's case, at Step Two, the ALJ mentioned COVID-19 (but not long COVID) in a list of 10 impairments the ALJ concluded were not severe because "there is no evidence of any ongoing functional limitations from these impairments due to the limited nature of the complaints, good response to treatment, or lack of any evidence of any functional limitations for any twelve-month period of time." (AR 18–19.) The ALJ then stated that he considered all medically determinable impairments when assessing

Plaintiff's RFC. (AR 19.) With respect to long COVID, the ALJ acknowledged that Plaintiff considered that impairment as contributing to her inability to work, but the ALJ did not mention or evaluate any limitations from COVID-19. (AR 22.) With respect to endometriosis, the ALJ never mentioned that diagnosis or any limitations related to it. (AR 15–28.)

As cited by the ALJ at Step Two, the record documents Plaintiff testing positive for COVID-19 at least twice, in July 2020 and January 2022. (AR 974, 1537.) Beginning in September 2020 and through at least 2022, she repeatedly informed doctors of notable fatigue. (AR 847, 861, 882, 937.) Then, she reported to multiple doctors that she had begun experiencing fainting episodes in October 2021. (AR 238, 719, 847, 937, 953.) In June 2022, she reported to her neurologist that other symptoms had worsened, fatigue, gait abnormalities, difficulty walking, arm tremors, weight loss, decreased appetite, mood swings, anxiety, daytime sleeping, numbness and weakness in extremities. (AR 847.) That fall, a cardiologist suspected that her fainting, as well as shortness of breath on exertion, rapid heartbeat, and chest pain could be due to long COVID. (AR 238.) In October 2022, her exercise tolerance was diminished on testing. (AR 253.) And a tilt table test was positive for vasodepressor vasovagal syncope (as opposed to POTS). (AR 254.) As the ALJ noted, in February 2024, Plaintiff was continuing (conservative) treatment for syncope. (AR 2031.)

In February 2022, Plaintiff complained to her gynecologist that she had been experiencing a cramping pain on her left side, radiating to her right side, for approximately three months. (AR 1045.) A subsequent ultrasound revealed a cyst in her left ovary that was likely an endometrioma. (AR 820.) She had repeated ultrasounds through 2023 that documented the cyst. (AR 1061, 1074–75, 1105, 1693.) Throughout that period the records document her reports of localized pain, sometimes worsening and accompanied by tenderness on exam. (AR 1030–31, 1302, 1412.) In December 2023, she had a hysterectomy and reported good improvement with respect to that impairment. (AR 1773, 1882, 1961, 1974.)

The Court is unable to determine that the omission of long COVID and endometriosis as severe impairments was harmless. Both of those impairments were documented in the record as lasting for more than 12 months and causing symptoms relevant to Plaintiff's ability to work. Although the ALJ gave some weight to Plaintiff's complaints of fatigue and pain, she failed to discuss the impact of either diagnosis. (AR 15–28.) Similarly, the State agency medical consultants, upon whose opinion the ALJ relied, did not evaluate any limitations from long COVID or endometriosis. (AR 60–63, 71–76.) In contrast, in May 2024, Plaintiff's primary care nurse practitioner listed endometriosis and long COVID as two of Plaintiff's diagnoses impacting her ability to work. (AR 2045.) Overall, it is not clear that the ALJ considered and incorporated all limitations from both these impairments into her RFC assessment. Therefore, the Court cannot conclude that this error was harmless. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (error is harmless if it is clear the mistake was "inconsequential to the ultimate nondisability determination").

**CONCLUSION AND RECOMMENDATION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). Here, Plaintiff seeks solely a remand for further consideration. The Court finds that is the proper remedy.

On remand, the ALJ must evaluate all impairments at Step Two, including long COVID and endometriosis. Because the Court found error at Step Two, it did not analyze Plaintiff's other claims regarding symptom testimony and RFC. Upon remand, however, the ALJ must obtain updated information about Plaintiff's impairments, conduct a new hearing, and re-assess Plaintiff's symptom testimony before formulating Plaintiff's RFC. To the extent the ALJ may, again, find improvement over time as a basis to discount Plaintiff's symptom testimony (AR 24), she must articulate to which testimony such a

finding applies. Also, the ALJ must evaluate whether some impairments and/or limitations existed for more than 12 months, even if some time after the 1-year mark the limitations were lessened or resolved.

The Magistrate Judge recommends that the District Court remand this matter to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-23-0457-TUC-SHR**.

Dated this 14th day of August, 2026.

Honorable Lynnette C. Kimmins
United States Magistrate Judge